UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANTHONY ORTIZ-DIAZ, on behalf of himself and all others similarly situated,<br><br>                        Plaintiffs,<br><br>v.<br><br>WILTON REASSURANCE LIFE COMPANY OF NEW YORK, ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK n/k/a WILTON REASSURANCE LIFE COMPANY OF NEW YORK, ALLSTATE SETTLEMENT CORPORATION n/k/a EVERLAKE SETTLEMENT CORPORATION, ALLSTATE ASSIGNMENT COMPANY n/k/a EVERLAKE ASSIGNMENT COMPANY, ALLSTATE INSURANCE COMPANY, and ALLSTATE LIFE INSURANCE COMPANY n/k/a EVERLAKE LIFE INSURANCE COMPANY,<br><br>                        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>DEMAND FOR JURY TRIAL |

Plaintiff Anthony Ortiz-Diaz ("Plaintiff" or "Ortiz-Diaz") brings this action on behalf of himself and the Class defined below against Defendants Wilton Reassurance Life Company of New York, Allstate Life Insurance Company of New York n/k/a Wilton Reassurance Life Company of New York, Allstate Settlement Corporation n/k/a Everlake Settlement Corporation, Allstate Assignment Company n/k/a Everlake Assignment Company, Allstate Insurance Company, and Allstate Life Insurance Company, n/k/a Everlake Life Insurance Company (collectively, "Defendants"). Plaintiff makes the following allegations based upon (a) personal knowledge, (b) the investigation of counsel, and (c) information and belief.

**INTRODUCTION**

1.      Structured settlements are litigation settlements paid out as an annuity. Structured settlement annuities allow claimants, like Plaintiff and the members of the Class, to receive all or a portion of their settlement – typically for personal injury, medical malpractice, wrongful death, or workers' compensation claims – in a series of payments, often for the protection of the settling claimant or the claimant's estate to ensure stable, guaranteed funds.

2.      In a structured settlement, the claimant settles with the defendant in the litigation in exchange for payments funded through an annuity. The settling defendant funds the settlement (i.e., provides the funds to purchase the annuity based on agreed-upon benefit payments with the settling claimant), is released from liability in the litigation by the settling claimant, and the liability for the structured settlement payments due to the claimant is assigned to an "assignment company," typically an insurance company. The assignment company (using the funds provided by the settling defendant in the litigation with the claimant) purchases an annuity from an insurance company, typically, as in this case, a life insurance company and typically, as in this case, an affiliate of the assignment company. The insurance company that issues the annuity ("annuity issuer") makes the payments to the settling claimant according to the terms of the structured settlement annuity contract that is executed as part of the structured settlement.

3.      This class action arises out of Defendants' failure to make timely payments to Plaintiff and the Class members in accordance with the terms of their structured settlements. Defendants unilaterally changed the payment date for structured settlement annuities company-wide, intentionally delaying payment of all structured settlement annuity obligations to Plaintiff and the Class. As a result, Plaintiff's guaranteed monthly payments have been delayed by approximately 30 days, and all guaranteed monthly payments, lump sum payments, and other

payments due and owing to the Class under thousands of structured settlements have been delayed. Further, substantial sums due and owing to Plaintiff and the Class have been subject to Defendants' intentional delays, as the annuity obligations under the structured settlements exceed $339 million annually and (on average) $28 million monthly.

4.      Defendants' conduct has breached and violated the terms of the structured settlements with Plaintiff and the Class members, which provide that payments will be made on the due dates specified in the structured settlement annuity contracts and that payment dates may *not* be changed.  Defendants' wrongful conduct has deprived Plaintiff and the Class members of the use of the funds due and owing under the structed settlements, causing Plaintiff and the Class members to lose the time value of the use of their settlement funds.

5.      In addition, based on the failure to make timely payments, Defendant Wilton Reassurance Life Company of New York, which holds possession of the structured settlement funds, has obtained the benefit of the use of the funds due and owing to Plaintiff and the Class members and has unjustly benefitted – at the expense of Plaintiff and the Class members – through Wilton Reassurance Life Company of New York's use of those funds, leveraging those funds for investment income.

6.      Accordingly, Plaintiff, on behalf of himself and the Class, brings this action for damages, disgorgement, and all other appropriate relief arising out of Defendants' unlawful conduct.

**PARTIES**

7.      Plaintiff Anthony Ortz-Diaz ("Plaintiff" or "Ortiz-Diaz") is a natural person and is, and at all relevant times has been, a citizen and resident of the State of New York. Plaintiff was and is the payee (annuitant) under a structured settlement, with Defendant Allstate Life

Insurance Company of New York as the annuity issuer and Allstate Settlement Corporation as the assignment company, executed in or about March 2001.

8. Defendant Wilton Reassurance Life Company of New York ("Wilton Re New York"), an insurance company, is a New York corporation with its principal place of business at 20 Glover Avenue, 4th Floor, Nowalk, Connecticut 06850. On or about November 1, 2021, Allstate Life Insurance Company of New York was merged with and into WRNY.

9. Defendant Allstate Life Insurance Company of New York ("Allstate Life New York") n/k/a as Wilton Re New York, an insurance company, was a New York corporation with its principal place of business at 878 Veterans Highway, Hauppauge, New York 11778. Upon information and belief, Allstate Life New York maintains a place of business at, and fulfills certain outstanding obligations from, 1650 Market Street, Suite 2800, Philadelphia, PA 19103.

10. Defendant Allstate Settlement Corporation n/k/a as Everlake Settlement Corporation, an insurance company, was and is a Nebraska corporation with its principal place of business at 115 Canopy Street, Suite 401, Lincoln, NE 68506. Upon information and belief, Allstate Settlement Corporation maintains a place of business at, and fulfills certain outstanding obligations from, 3100 Sanders Rd, Northbrook, IL 60062.

11. Defendant Allstate Assignment Company n/k/a as Everlake Assignment Company, an insurance company, was and is a Nebraska corporation with its principal place of business at 115 Canopy Street, Suite 401, Lincoln, NE 68506. Upon information and belief, Allstate Assignment Company maintains a place of business at, and fulfills certain outstanding obligations from, 3100 Sanders Rd, Northbrook, IL 60062.

12. Collectively, Defendant Allstate Settlement Corporation n/k/a as Everlake Settlement Corporation and Defendant Allstate Assignment Company n/k/a as Everlake

Assignment Company, are known as the "Allstate-Everlake Assignment Companies."

13.     Defendant Allstate Insurance Company, an insurance company, was and is an Illinois corporation with its principal place of business at 3100 Sanders Rd, Northbrook, IL 60062.

14.     Defendant Allstate Life Insurance Company n/k/a Everlake Life Insurance Company, an insurance company, was and is an Illinois corporation with its principal place of business at 3100 Sanders Rd, Northbrook, IL 60062.  On or around November 1, 2021, Allstate Life Insurance Company was sold to Everlake US Holdings Company and changed its name to Everlake Life Insurance Company (hereinafter, "Allstate-Everlake Life").

## JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), because this is a class action with aggregate claims exceeding $5,000,000, exclusive of interest and costs, and Plaintiff and members of the proposed Class are citizens of states different from at least one Defendant.

16.     The Court has personal jurisdiction over Defendants because they transact business in the United States, including in this District, and Wilton Re New York has its principal place of business in this District. Venue is proper in this District pursuant to 28 U.S.C. §1391 because Defendants transact business in this District and because a substantial part of the conduct giving rise to this complaint took place within this District, including Defendants' failure to make timely and proper payments to Plaintiff and the members of the Class under thousands (if not more) of structured settlement annuities and Wilton Re New York's improper use of the funds due and owing to Plaintiff and the Class members under those structured settlement annuities for its own financial ill-gotten gains.

## FACTUAL ALLEGATIONS

**A.    Structured Settlement Annuities Issued by Allstate Life New York.**

17.    In a structured settlement, a claimant (like Plaintiff), settles with a defendant in the litigation in exchange for payments that are typically funded through an annuity. As part of this process, the claimant agrees to settle with the defendant and the settling defendant is released from liability. The settling defendant funds the settlement (i.e., provides the funds to purchase the annuity based on agreed-upon benefit payments with the settling claimant) and assigns liability for the structured settlement payments to the assignment company. The assignment company, here, the Allstate-Everlake Assignment Companies, using the funds provided by the defendant in settling the litigation with the claimant, purchases an annuity from the annuity issuer, typically a life insurance company like Allstate Life New York here, and typically, as in this case, an affiliate of the assignment company (the Allstate-Everlake Assignment Companies), and the annuity issuer makes the payments to the claimant according to the terms of the structured settlement annuity contract executed as part of the structured settlement. The following diagram illustrates this process:

## The Structured Settlement Process



18.      For many years – through at least March 2013 – Allstate Life New York issued structured settlement annuities funding payments under structured settlements with Plaintiff and the Class members. In most (if not all) cases, these annuities were issued under a "qualified assignment," whereby the Allstate-Everlake Assignment Companies (wholly owned subsidiaries of Allstate-Everlake Life), assumed liability to make the payments under the settlement settlements entered into with Plaintiff and the members of the Class by Defendant Allstate Insurance Company or unaffiliated parties (like the settling defendant in the underlying litigation with Plaintiff).

19.      The Allstate-Everlake Assignment Companies purchased annuities from Allstate Life New York to fund the structured settlement payments to Plaintiff and the Class members.[1] Allstate Life New York, as the annuity issuer, was obligated to make the payments to Plaintiff and

---

[1] Allstate Life Insurance Company of New York 2020 Annual Statement ("Allstate Life New York 2020 Annual Statement") at page 19.25.

the Class members according to the terms and conditions of the structured settlement annuities, including, but not limited to, the amount, duration, and timing of those payments.  In addition, the payments by the Allstate-Everlake Assignment Companies to Plaintiff and the Class members under the structured settlements were indemnified and guaranteed by Allstate Insurance Company and Allstate-Everlake Life, respectively.[2]

20.    As of year-end 2020, Allstate Life New York's reserves for the structured settlement annuity payments were \$2,034,252,316.[3]  This figure represented the present dollar value of the annuity payment obligations under the structured settlements as of year-end 2020. Allstate Life New York earned investment income from the reserves, enabling Allstate Life New York to make the required payments under the structured settlements.

**B.    Allstate Life New York's Annuity Block and Reserves Were Acquired by Wilton Re New York's Parent and Merged into Wilton Re New York.**

21.    On March 29, 2021, Allstate-Everlake Life and Allstate Insurance Company (together with other Allstate affiliates) entered into an agreement to sell Allstate Life New York to Wilton Reassurance Company, Wilton Re New York's parent company.[4] On October 1, 2021, Wilton Reassurance Company closed on the acquisition of all of the issued and outstanding capital stock of Allstate Life New York.[5]  Immediately following the sale, Allstate Life New York entered into a coinsurance funds withheld agreement and ceded life and payout annuity policies to Wilton

---

[2] The For structured settlement annuities that Allstate Settlement Corporation purchased from Allstate Life New York, including Plaintiff's structured settlement annuity, Allstate Insurance Company indemnified those payments through the issuance of surety bonds. For structured settlement annuities that Allstate Assignment Company purchased from Allstate Life New York, Allstate-Everlake Life guaranteed the payments. *Id.*

[3] *Id.*

[4] Allstate Life Insurance Company of New York 2021 Q3 Quarterly Financial Statement ("Allstate Life New York 2021 Q3 Statement") at page 7.10.

[5] Allstate Life New York 2021 Q3 Statement at page 7.10; Wilton Re New York Statutory – Basis Management Discussion & Analysis December 31, 2023 ("Wilton Re New York 2023 MD&A") at page 1; New York Department of Financial Services Financial Condition Report on Examination of the Wilton Reassurance Life Company of New York, as of December 31, 2020 ("NY DFS Report") at page 16, available at https://www.dfs.ny.gov/system/files/documents/2022/06/60704fc20_0.pdf.

Reassurance Company (its parent), which included the structured settlement annuity contracts with Plaintiff and the Class. Life and annuity reserves in the amount of $4.38 billion were ceded to Wilton Reassurance Company under the agreement, and $4.12 billion remained in a funds withheld account at Allstate Life New York.[6] This figure included Allstate Life New York's structured settlement annuity reserve funds above, which totaled $2.034 billion as of year-end 2020.

22.    On November 1, 2021, Allstate Life New York was merged with and into Wilton Re New York (a wholly-owned subsidiary of Wilton Reassurance Company).[7] As part of the merger, Wilton Re New York acquired possession of Allstate Life New York's reserve funds in the amount referenced above, including the structured settlement reserve funds.

23.    The block of policies and annuities acquired from Allstate Life New York – and related reserve funds generating investment income – were and are valuable assets. Wilton Reassurance Company paid at least $220 million to acquire Allstate Life New York in connection with the merger into Wilton Re New York,[8] but – according to Allstate – the payment may have been $400 million.[9]

### C.    Plaintiff's Structured Settlement.

24.    To settle a litigation claim, Plaintiff (then a minor) entered into a structured settlement in or about March 2001 with Allstate Settlement Corporation and the defendant in the underlying litigation (National Railroad Passenger Corp.). The parties executed a "Uniform Qualified Assignment and Release," and effectuated a "qualified assignment" within the meaning of Section 130(c) of the Internal Revenue Code, pursuant to which the defendant (National

---

[6] Allstate Life New York 2021 Q3 Statement at page 7.10; *see also* NY DFS Report at page 16 (Allstate Life New York's policies in force included a closed block of interest-sensitive and traditional life insurance and annuities).
[7] Allstate Life New York 2021 Q3 Statement at page 7.10; *see also* NY Dept report at 4, 16.
[8] https://www.wiltonre.com/allstate-business-wire-press-release/#:~:text=NORTHBROOK%2C%20Ill.,of%20New%20York%20(ALNY); https://www.insurancejournal.com/news/national/2021/03/29/607467.htm
[9] Allstate Corporation 2021 Annual Report at pages 120, 200.

Passenger Railroad Corp.) assigned to Allstate Settlement Corporation ("Assignee"), and Allstate Settlement Corporation assumed, liability to make the periodic payments to Plaintiff ("Claimant") in accordance with the payment schedule contained in the structured settlement annuity contract.

25.    To fund the structured settlement payments, Allstate Settlement Corporation purchased a "qualified funding asset" in the form of an annuity contract from Allstate Life New York, the annuity issuer. Pursuant to the annuity contract, Allstate Life New York agreed to make the periodic payments to Plaintiff ("the Measuring Life or other payee designated by [Allstate Settlement Corporation]"). Those periodic payments due and owing to Plaintiff under the annuity contract were and are as follows:

> $1,500 per month for life, 30 years certain [360 payments], beginning 4/3/2001
> $25,000 lump sum to be paid 10/12/2004
> $125,000 lump sum to be paid 10/12/2007
> $250,000 lump sum to be paid 10/12/2011
> $300,000 lump sum to be paid 10/12/2016
> $560,000 lump sum to be paid 10/12/2021
> $560,000 lump sum to be paid 10/12/2026
> $566,500 lump sum to be paid 10/12/2031
> $573,650 lump sum to be paid 10/12/2036.

26.    True and correct copies of the (i) Uniform Qualified Assignment and Release and (ii) annuity contract (the "qualified funding asset" purchased to fund the structured settlement payments), which were executed as part of the structured settlement with Plaintiff, are attached hereto as Exhibit A.[10] Uniform Qualified Assignments and Releases and annuity contracts were likewise executed as part of the structured settlements with the members of the Class.

---

[10] Plaintiff's personally identifiable information has been redacted.

27.     Allstate Life New York made the payments to Plaintiff in accordance with the above schedule in the annuity contract, including the amount and timing of the guaranteed monthly payments and lump sum payments. Specifically, Allstate Life New York consistently made the guaranteed monthly payments due in the amount of $1,500, which were electronically transferred to Plaintiff's account on the 3rd of each month.

28.     Even after Allstate Life New York was merged into Wilton Re New York, Allstate Life New York and/or its Allstate affiliates continued to administer the structured settlements with Plaintiff and the Class through early 2023. In or about April 2023, Wilton Re New York, which had assumed Allstate Life New York's policies and annuity contracts, notified Plaintiff (and all structured settlement payees) "regarding a change in the administration of your policy/contract," which was to be "transferred from Allstate to Alliance-One Services, Inc." effective May 30, 2023. Importantly, Wilton Re New York informed Plaintiff and other payees that "All the rights and benefits you have with your policy/contract will remain the same. This administrative change has no effect on any of your contractual provisions. Your original policy/contract continues to be your valid insurance contract with us. A 'new' policy/contract will not be issued."

29.     Wilton Re New York failed to make the guaranteed monthly payment to Plaintiff due on January 3, 2024. Instead, Wilton Re New York made the January 3, 2024 guaranteed monthly payment on February 1, 2024, approximately 30 days late under the terms of the structured settlement annuity contract.  In addition, Wilton Re New York has continued to make each guaranteed monthly payment due and owing to Plaintiff on the 3rd of the month approximately 30 days late.

30.     Wilton Re New York has admitted in writing to Plaintiff that the guaranteed monthly payments are due on the 3rd of each month but has provided no basis for failing to timely

11

make the guaranteed monthly payments due. Further, Wilton Re New York has failed and refused to commit to making payments on the due dates under the terms of the structured settlements on a going forward basis.

31.    Wilton Re New York instituted new payment dates for all structured settlement annuities company-wide (including Plaintiff's), such that *all* payments are processed on a single day at the end of each month, irrespective of the dates due under the terms of the structured settlements.

32.    Wilton Re New York's and Defendants' failure to make the guaranteed monthly payments due on the 3rd of the month is a breach and violation of the structured settlement annuity contract with Plaintiff, which, in addition to establishing specific payments dates for all payments due under Plaintiff's structured settlement, provides that, "[a]ny payments due a beneficiary will be paid on their specific due dates," and "[p]ayment dates and amounts may not be changed…."[11]

**D.    Wilton Re New York's Structured Settlement Annuity Payment Changes.**

33.    In 2023, Wilton Re New York converted the administration of the acquired block of policies (and premiums) from Allstate Life New York, including the structured settlement annuity contracts, to Wilton Re New York's "preferred [a]dministrator," from that previously utilized by Allstate Life New York.[12]

34.    In connection with the change in administration of the policies and contracts, Wilton Re New York unilaterally changed the payment date for *all* structured settlement annuities company-wide. Wilton Re New York no longer makes payments on the due dates in accordance with the terms of the thousands of structured settlement annuity contracts. Since the change in administration, the funds for all structured settlement annuity payments are "released" on a single

---

[11] Ex. A, Annuity Contract at page 4.
[12] Wilton Re New York 2023 MD&A at page 12.

day at or about the end of each month, and the payments require additional time to process and transmit to payees. By making this uniform change, Wilton Re New York intentionally delays payment of all structured settlement annuity obligations to payees – and this pertains to all guaranteed monthly payments, lump sum payments, and all other payments due under structured settlements with Plaintiff and the Class.

35.     Wilton Re New York's (and Defendants') conduct violates the terms of the structured settlements with Plaintiffs and the Class which, like Plaintiff's structured settlement annuity contract, provide that payments will be made on the due dates specified in the structured settlement annuity contracts and that payment dates may not be changed.

36.     Wilton Re New York's (and Defendants') delay in payments to Plaintiff and the Class of structured settlement payees is a financial windfall to Wilton Re New York, as it obtains the benefit of the use of the funds for the additional period of delay each month and every other delayed payment interval and Wilton Re New York's financial gain is at the expense of payees, who are deprived of the use of their settlement funds during the delayed payment periods.

37.     As reflected in Wilton Re New York's Annual Statement for the Year Ended December 31, 2023 ("Wilton Re New York 2023 Annual Statement"), Wilton Re New York reports that it owes at least $339 million in annual payments to structured settlement payees under the structured settlement annuities (an average of more than $28 million in monthly payments),[13] and Plaintiff and the Class have been deprived of the use of these funds by virtue of Defendants' delayed payments under the structured settlements.  According to Wilton Re New York's own financial reporting, it appears to apply an interest rate of 5.5% to these funds,[14] which shows that Wilton Re New York's internal calculation of the average loss of the use of the funds on a monthly

---

[13] Wilton Re New York 2023 Annual Statement at page 17 (Exhibit 8, Column 4).
[14] Wilton Re New York 2023 Annual Statement at page 12.2 (Exhibit 5) ("83a 5.50% Imm 1987-2009").

basis by Plaintiff and the Class members – relying on Wilton Re New York's figure – exceeds $1.5 million. This amount represents only the present value loss on an average monthly basis – predicated solely on Wilton Re New York's internal interest figure as reported in its annual statement and subject to further investigation and analysis – but does not represent Plaintiff's and the Class's future value loss of the use of the funds due Plaintiff and the Class members under the structured settlements, which is significantly higher.

38.     In addition, Wilton Re New York earns substantial investment income from the billions in structured settlement annuity reserves that fund the structured settlement payments to Plaintiff and the Class. According to Wilton Re New York's financial reporting, Wilton Re New York realizes hundreds of millions of dollars on an annual basis in investment income from those reserves,[15] which is increased by the failure to timely make payments under the thousands of structured settlements with Plaintiff and the Class because Wilton Re New York retains – and has the use of – the funds during the delayed payment periods.

## CLASS ALLEGATIONS

39.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2) and (3), and 23(c)(4).

40.     Plaintiff seeks certification on behalf of a class defined as follows (the "Class"):

> **Class:** All payees, beneficiaries, and/or estates due payments under a structured settlement with one of the Allstate-Everlake Assignment Companies as the assignee, funded with an annuity issued by Allstate Life New York.

---

[15] Wilton Re New York 2023 Annual Statement at page 6 (Column 4); Wilton Re New York 2023 MD&A, *passim.*

41.     Plaintiff reserves the right to modify or refine the definitions of the Class based upon discovery of new information, legal developments, and/or to accommodate any of the Court's manageability concerns.

42.     **Ascertainability**.  The proposed Class is readily ascertainable because they are defined by using objective criteria to allow class members to determine if they are part of the Class.  Further, the Class can be readily identified through records maintained by Defendants.

43.     **Numerosity (Rule 23(a)(1))**.  The Class is so numerous that joinder of individual members herein is impracticable.  The exact number of members of the Class, as herein identified and described, is not known; upon information and belief there are at least thousands of payees under the structured settlement annuities at issue in this case.

44.     **Commonality (Rule 23(a)(2))**.  Common questions of fact and law exist for each cause of action and predominate over questions affecting only individual Class members, including the following:

(a)     whether Defendants, or any of them, breached the structured settlements with Plaintiff and the members of the Class, or their duties or obligations under the structured settlements, by failing to make payments to Plaintiff and the members of the Class according to the terms of the structured settlements;

(b)     whether Defendant Wilton Re New York was and is unjustly enriched by failing to make payments to Plaintiff and the members of the Class according to the terms of the structured settlements;

(c)     whether Plaintiff and the members of the Class are entitled to damages and any other monetary relief; and

(d)     whether Plaintiff and the members of the Class are entitled to equitable relief based on Defendant Wilton Re New York's improper use of the funds due and owing to Plaintiff and the members of the Class according to terms of the structured settlements.

45.     **Typicality (Rule 23(a)(3))**.  Plaintiff's claims are typical of the claims of the proposed Class.  Plaintiff and the Class suffered injuries because of Defendants' wrongful conduct that is uniform across the Class.

46.     **Adequacy (Rule 23(a)(4))**.  Plaintiff has and will continue to represent and protect the interests of the Class fairly and adequately.  Plaintiff has retained counsel competent and experienced in complex litigation and class actions.  Plaintiff has no interest that is antagonistic to those of the Class members, and Defendants have no defenses unique to Plaintiff.  Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so.  Neither Plaintiff nor Plaintiff's counsel have any interest adverse to those of the other members of the Class.

47.     **Substantial Benefits**.  This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable.  The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the Courts and Defendants, would create a risk of inconsistent or varying adjudications of the questions of law and fact common to members of the Class, and would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create

economies of time, effort, and expense and promote uniform decision-making.

48.     Class certification, therefore, is appropriate under Fed. R. Civ. P. 23(b)(3) because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

49.     Class certification is also appropriate under Fed. R. Civ. P. 23(b)(2) because Defendants acted or refused to act on grounds generally applicable to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

50.     In the alternative, the common questions of fact and law, *supra*, are appropriate for issue certification on behalf of the proposed Class under Fed. R. Civ. P. 23(c)(4).

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### BREACH OF CONTRACT
**Against Defendants by Plaintiff Individually and on Behalf of the Class**

51.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

52.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendants for breach of contract.

53.     Plaintiff and the members of the Class entered into binding and enforceable structured settlements under which Defendants, and each of them, were required to make payments according to the payment schedule and on the specific due dates set forth in the structured settlement annuity contracts. Further, pursuant to the terms of the structured settlement annuity contracts, the payment dates were not permitted to be changed.

54.     The Allstate-Everlake Assignment Companies were and are liable for the payments to Plaintiff and the Class under the terms of the structured settlements. Wilton Re New York, which

acquired the block of structured settlement annuities issued by Allstate Life New York through acquisition and merger, and Allstate Life New York, were and are obligated to make the payments to Plaintiff and the Class members under the terms of the annuities issued by Allstate Life New York funding the structured settlements. Allstate Insurance Company and Allstate-Everlake Life, respectively, indemnified and guaranteed the payments due and owing by the Allstate-Everlake Assignment Companies under the structured settlements.

55.     As described above, Defendants have breached the structured settlements with Plaintiff and the Class, and their obligations under and in connection with, the structured settlements, by failing and refusing to timely make the payments under the terms of the structured settlements with Plaintiff and the Class, including by failing to make the payments on the specified due dates and uniformly changing the payment dates under the terms of the structured settlements.

56.     Plaintiff and the Class have at all times performed their obligations under the structured settlements.

57.     As a direct and proximate result of Defendants' breach of the structured settlements, Plaintiff and the Class have suffered and will continue to suffer harm in the form of the loss of use the funds to which they are entitled to be paid on the due dates specified in the structured settlements, together with all consequential damages as a result of the deprivation of the use of the funds, and Plaintiff and the Class are entitled to recover all appropriate relief.

## <u>SECOND CLAIM FOR RELIEF</u>

**BREACH OF CONTRACT**
**(THIRD-PARTY BENEFICIARY)**
**Against Defendants by Plaintiffs Individually and on Behalf of the Class**

58.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

59.     Plaintiff brings this claim, individually and on behalf of the members of the

proposed Class against Defendants for breach of contract as third-party beneficiaries of (i) the annuity contracts between Allstate Life New York, assumed by Wilton Re New York, and the Allstate-Everlake Assignment Companies and (ii) the indemnifications by Allstate Insurance Company and guarantees by Allstate-Everlake Life of the structured settlement payments by the Allstate-Everlake Assignment Companies.

60.     Plaintiff and the members of the Class entered into binding and enforceable structured settlements. Pursuant to the Uniform Qualified Assignments and Releases executed as part of the structured settlements by Plaintiff and the members of the Class as "claimant," the Allstate-Everlake Assignment Companies as "assignee," and Allstate Life New York as "annuity issuer" (and the settling defendant in the underlying litigation as "assignor"), the parties intended that the structured settlement be funded through the purchase of a "qualified funding asset" in the form of an annuity contract issued by Allstate Life New York. In addition, as part of the structured settlements, the Allstate-Everlake Assignment Companies entered into binding and enforceable annuity contracts with Allstate Life New York, assumed by Wilton Re New York, knowing and intending that the annuities would fund the payments to Plaintiff and the members of the Class under those structured settlements. Accordingly, Plaintiff and the members of the Class are third-party beneficiaries of the annuity contracts between the Allstate-Everlake Assignment Companies and Allstate Life New York, assumed by Wilton Re New York.

61.     Pursuant to the terms of the structured settlement annuity contracts between the Allstate-Everlake Assignment Companies and Allstate Life New York, which annuity contracts were assumed by Wilton Re New York when it acquired the block of annuity contracts and reserves from Allstate Life New York and Allstate Life New York was merged into Wilton Re New York, Wilton Re New York was and is required is to make payments according to the payment schedule

and on the specific due dates set forth in the structured settlement annuity contracts, and the payment dates were not permitted to be changed.

62.    As described above, the Allstate-Everlake Assignment Companies, Wilton Re New York, and Allstate Life New York have breached the structured settlements with Plaintiff and the Class by failing and refusing to timely make the payments under the terms of the structured settlements with Plaintiff and the Class, including by failing to make the payments on the specified due dates and uniformly changing the payment dates under the terms of the structured settlements.

63.    In addition, in connection with the structured settlements with Plaintiff and the members of the Class, Allstate Insurance Company and Allstate-Everlake Life, respectively, indemnified and guaranteed the payments due from the Allstate-Everlake Assignment Companies. The indemnifications and guarantees were and are binding and enforceable contracts, which were entered into knowing and intending that they would ensure payment to Plaintiff and the members of the Class under the structured settlements. Accordingly, Plaintiff and the members of the Class are third-party beneficiaries of the indemnifications and the guarantees between Allstate Insurance Company and Allstate-Everlake Life, respectively, and the Allstate-Everlake Assignment Companies.

64.    As described above, Allstate Insurance Company and Allstate-Everlake Life have breached the indemnifications and guarantees in favor of the Plaintiff and the members of the Class and thereby the structured settlements with Plaintiff and the Class by failing and refusing to timely make the payments under the terms of the structured settlements with Plaintiff and the Class, including by failing to make the payments on the specified due dates and uniformly changing the payment dates under the terms of the structured settlements.

65.     As a direct and proximate result of Defendants' breach of the structured settlements, Plaintiff and the Class have suffered and will continue to suffer harm in the form of the loss of use the funds to which they are entitled to be paid on the due dates specified in the structured settlements, together with all consequential damages as a result of the deprivation of the use of the funds, and Plaintiff and the Class are entitled to recover all appropriate relief.

## THIRD CLAIM FOR RELIEF

### UNJUST ENRICHMENT
Against Defendant Wilton Re New York by
Plaintiff Individually and on Behalf of the Class

66.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

67.     Plaintiff brings this claim individually and on behalf of the members of the proposed Class against Defendant Wilton Re New York for unjust enrichment.

68.     By failing to make payments to Plaintiff and the members of the Class on the due dates specified under the terms of the structured settlements, Wilton Re New York has withheld possession of funds to which Plaintiff and the members of the Class were and are entitled. By virtue of its wrongful conduct, Wilton Re New York obtained the benefit of the use of the funds due and owing to Plaintiff and the members of the Class for the periods of delay, earning additional investment income on those funds. Wilton Re New York knowingly and willingly accepted these wrongful and ill-gotten gains.

69.     Wilton Re New York has enriched itself (and has continued to do so) at the expense of payees (Plaintiff and the members of the Class) who have been – and continue to be – deprived of the use of their structured settlement funds during the delayed payment periods.

70.     Plaintiff and the members of the Class have conferred substantial benefits in the form of investment income on Wilton Re New York, and it would be inequitable and unjust for

Wilton Re New York to retain the benefits from the use of funds to which Plaintiff and the members of the Class were and are entitled under the terms of their structured settlements.

71.    Plaintiff and the members of the Class are therefore entitled to recover the amounts realized by Wilton Re New York at the expense of Plaintiff and the members of the Class.

72.    Plaintiff and the Class lack an adequate remedy at law to divest Wilton Re New York of its unlawful profits and ill-gotten gains.

73.    Plaintiff and the proposed Class seek disgorgement, imposition of a constructive trust, and/or other appropriate injunctive and declaratory relief to recover Wilton Re New York's unlawful profits and ill-gotten gains, and all other just and proper relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for relief and judgment against Defendants as follows:

A.    An order certifying this action as a class action, certifying the Class requested herein, designating Plaintiff as the representatives of the Class, appointing Plaintiff's counsel permanent lead counsel to the Class, and requiring Defendants to bear the costs of a class action;

B.    A judgment against Defendants on all counts as alleged herein;

C.    Awarding Plaintiff and the Class economic, compensatory, actual, and consequential damages, in an amount to be determined at trial;

D.    Awarding disgorgement of all unlawful profits and gains, that Defendant Wilton Re New York obtained as the result of its wrongful and unjust conduct described herein, and such other equitable relief as the Court deems just and proper, including the imposition of a constructive trust;

E.    Injunctive and/or declaratory relief, as permitted and as the Court deems just and proper;

F.    Awarding Plaintiff and the Class reasonable attorneys' fees and costs as allowed by law;

G.    Awarding pre-judgment and post-judgment interest, as permitted by statute and/or law; and

H.    Granting such other and further relief that the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury for all issues so triable.

DATED: November 6, 2024

*/s/ Steven L. Bloch*
Steven L. Bloch (ct31246)
Jonathan Seredynski (ct30412)
Krystyna Gancoss (ct31660)
Kate Sayed*
SILVER GOLUB & TEITELL LLP
One Landmark Sq., 15th Fl.
Stamford, CT 06901
Tel: (203) 325-4491
Fax: (203) 325-3769
sbloch@sgtlaw.com
jseredynski@sgtlaw.com
kgancoss@sgtlaw.com
ksayed@sgtlaw.com

*Counsel for Plaintiff and the Proposed Class*

Gregory Kuczinski*
Gregory Kuczinski, Esq. P.C.
301 Old Tarrytown Road
White Plains, NY 10603
Tel: (914) 245-7200
Fax: (914) 245-7208
gkuczinski@kuczinskilaw.com

*Additional counsel for Plaintiff*

*\*Pro hac vice forthcoming*

# EXHIBIT   A

# Uniform Qualified Assignment and Release

"Claimant"    **Anthony Ortiz-Diaz**

"Assignor"    **National Railroad Passenger Corporation**

"Assignee"    **Allstate Settlement Corporation**

"Annuity Issuer"    **Allstate Life Insurance Company of New York**

"Effective Date"    March 5, 2001

This Agreement is made and entered into by and between the parties hereto as of the Effective Date with reference to the following facts:

A.  Claimant has executed a settlement agreement or release dated MARCH 1, , 2001 (the "Settlement Agreement") that provides for the Assignor to make certain periodic payments to or for the benefit of the Claimant as stated in Addendum No. 1 (the "Periodic Payments"); and

B.  The parties desire to effect a "qualified assignment" within the meaning and subject to the conditions of Section 130(c) of the Internal Revenue Code of 1986 (the "Code").

**NOW, THEREFORE,** in consideration of the foregoing and other good and valuable consideration, the parties agree as follows:

1.  The Assignor hereby assigns and the Assignee hereby assumes all of the Assignor's liability to make the Periodic Payments. The Assignee assumes no liability to make any payment not specified in Addendum No. 1.

2.  The Periodic Payments constitute damages on account of personal injury or sickness in a case involving physical injury or physical sickness within the meaning of Sections 104(a)(2) and 130(c) of the Code

3.  The Assignee's liability to make the Periodic Payments is no greater than that of the Assignor immediately preceding this Agreement. Assignee is not required to set aside specific assets to secure the Periodic Payments. The Claimant has no rights against the Assignee greater than a general creditor. None of the Periodic Payments may be accelerated, deferred, increased or decreased and may not be anticipated, sold, assigned or encumbered.

4.  The obligation assumed by Assignee with respect to any required payment shall be discharged upon the mailing on or before the due date of a valid check in the amount specified to the address of record.

5.  This Agreement shall be governed by and interpreted in accordance with the laws of the State of __Nebraska__ .

6.  The Assignee may fund the Periodic Payments by purchasing a "qualified funding asset" within the meaning of Section 130(d) of the Code in the form of an annuity contract issued by the Annuity Issuer. All rights of ownership and control of such annuity contract shall be and remain vested in the Assignee exclusively.

7.  The Assignee may have the Annuity Issuer send payments under any "qualified funding asset" purchased hereunder directly to the payee(s) specified in Addendum No. 1. Such direction of payments shall be solely for the Assignee's convenience and shall not provide the Claimant or any payee with any rights of ownership or control over the "qualified funding asset" or against the Annuity Issuer.

Mar-14-2001  05:60pm  From-SETTLEMENT PLANNING          7033126419          T-163  P.002/002  F-267

8.  Assignee's liability to make the Periodic Payments shall continue without diminution regardless of any bankruptcy or insolvency of the Assignor.

9.  In the event the Settlement Agreement is declared terminated by a court of law or in the event that Section 130(c) of the Code has not been satisfied, this Agreement shall terminate. The Assignee shall then assign ownership of any "qualified funding asset" purchased hereunder to Assignor, and Assignee's liability for the Periodic Payments shall terminate.

10.  This Agreement shall be binding upon the respective representatives, heirs, successors and assigns of the Claimant, the Assignor and the Assignee and upon any person or entity that may assert any right hereunder or to any of the Periodic Payments.

11.  The Claimant hereby accepts Assignee's assumption of all liability for the Periodic Payments and hereby releases the Assignor from all liability for the Periodic Payments.

Assignor: National Railroad Passenger Corp.

By: _____
        Authorized Representative

Title: Director Claims/Litigation

Assignee: Allstate Settlement Corporation

By: _____
        Authorized Representative

Title: Sr. Manager

Claimant: _____
                    MARTH ORTIZ

Approved as to Form and Content:

By: _____
            Claimant's Attorney

MOTHER AND NATURAL GUARDIAN OF INFANT
ANTHONY ORTIZ-DIAZ

# Allstate Life Insurance Company of New York

A Stock Company - Home Office Address: Farmingville, New York  11738

## Single Premium Immediate Certain Annuity

**CONTRACT**—This contract is issued to Allstate Settlement Corporation (called "ASC") in consideration of the application, a copy of which is attached, and the payment of the single premium.  The contract and the application are the entire contract.  All statements made in the application are representations and not warranties.  No statement will be used by us in defense of a claim or to void this contract unless it is in the signed application.  Only our officers may change this contract or waive a right or requirement.  No agent may do this.

Allstate Life Insurance Company of New York (called "we" or "us") will make the payments shown on Page 3 to the Measuring Life or other payee designated by ASC, provided that the Measuring Life is alive.  In addition, if the Measuring Life is not living, any payments shown on Page 3 will be made to the beneficiary.

This contract stops when all payments have been made.

**RIGHT TO CANCEL**—If ASC is not satisfied with this contract, it may be voided by returning it to Allstate Life Insurance Company of New York, Farmingville, New York  11738, or our agent.  ASC must notify us and return the policy by midnight of the 10th day after ASC receives it.  Notice given by mail is effective on being postmarked, properly addressed and postage prepaid.  We will return the single premium, less any payments already made, within 10 days after we receive the policy and notice.

This is a legal contract between ASC and us.  READ THIS POLICY CAREFULLY.

# COPY

Signed for ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK at our Home Office in Farmingville, New York.

Michael J. Velotta
Secretary

Thomas J. Wilson
President

Page 1

NYLU216

SCHEDULE OF PAYMENTS

| DATE | AMOUNT |
|------|--------|
| OCT 12, 2004 | $ 25000.00 |
| OCT 12, 2007 | $ 125000.00 |
| OCT 12, 2011 | $ 250000.00 |
| OCT 12, 2016 | $ 300000.00 |
| OCT 12, 2021 | $ 560000.00 |
| OCT 12, 2026 | $ 560000.00 |
| OCT 12, 2031 | $ 566500.00 |
| OCT 12, 2036 | $ 573650.00 |

| | NAME | SEX | DATE OF BIRTH |
|--|------|-----|---------------|
| MEASURING LIFE: | ANTHONY        ORTIZ-DIAZ | MALE | ██████████ |

FIRST PAYMENT:    $  25000.00 ON OCT 12, 2004
LAST PAYMENT:     $ 573650.00 ON OCT 12, 2036

CONTRACT NUMBER:    95009544   OWNER:  ALLSTATE SETTLEMENT CORP
ISSUE DATE:    MAR 5, 2001
PAGE 3
POLICY DATA PAGE FOR NYLU216

**BENEFICIARY–**Unless changed by ASC, the beneficiary is as named in the application.  If there is no beneficiary named or living, the beneficiary is the Measuring Life's estate.  For purposes of this section, "living" shall mean living on the earlier of:

1. The day we receive due proof of the Measuring Life's death; or

2. The 15th day past the Measuring Life's death.

Unless ASC states otherwise by irrevocably naming a beneficiary, ASC may change the beneficiary while the Measuring Life is alive.  A change must be made to us in writing.  The change must be acceptable to us.  Once we accept the change, it takes effect as of the day ASC signed the request.  Each change is subject to any payment we make or action we take before we accept it.

Any payments due a beneficiary will be paid on their specified due dates, and will not be commuted or paid in a lump sum.

**INCONTESTABILITY—**We may not contest this contract after it is issued.

**MINIMUM VALUES—**The payments provided by this contract are not less than the minimum values required by the state in which this contract is sold.

**NON-PARTICIPATING—**This contract does not pay dividends.

**NON-ASSIGNABLE—**Payments may not be anticipated, assigned or pledged as collateral.  Payment dates and amounts may not be changed, either to provide for earlier payment or longer deferral.  The contract has no cash surrender or policy loan value.

So far as the law allows, all payments to any person named by ASC to receive them are exempt from that person's creditors, debts and contracts, and from seizure or attachment by court order or other legal process.

Page 4

# ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK

**Home Office: Farmingville, New York 11738**

## Application for Single Premium Immediate Annuity

**1. Measuring Life**

Full Name: Anthony Ortiz-Diaz                      Phone: ( )

Address: 764 E. 214th St.  Apt. #7 Bronx, NY 10465

Social Security No.: ▮▮▮▮▮    Date of Birth: ▮▮▮▮▮    Sex: Male

**2. Joint Measuring Life (if applicable)**

Full Name: _____    Phone: ( )

Address: _____

Social Security No.: _____    Date of Birth: _____    Sex: _____

Relationship to Measuring Life: _____

**3. Owner**

Full Name: Allstate Settlement Corporation    Phone: ( 402 ) 479-7244

Address: 206 South 13th St., Suite 200 , Lincoln, NE 68508-2010

**4. Payee (will be Measuring Life if left blank)**

Full Name: _____    Phone: ( )

Address: _____

Relationship to Measuring Life: _____

**5. Payment Information (Submit proof of age for life or joint life payments.)**

| Start Date | Type (e.g., certain, life, lump sum, joint) | Amount | Number of Payments | Frequency of Payments |
|---|---|---|---|---|
| 04/03/2001 | Life Certain | $1,500 | 360 | M |
| 10/12/2004 | Lump Sum | $25,000 | 1 | |
| 10/12/2007 | Lump Sum | $125,000 | 1 | |
| 10/12/2011 | Lump Sum | $250,000 | 1 | |
| 10/12/2016 | Lump Sum | $300,000 | 1 | |
| 10/12/2021 | Lump Sum | $560,000 | 1 | |
| 10/12/2026 | Lump Sum | $560,000 | 1 | |
| 10/12/2031 | Lump Sum | $566,500 | 1 | |
| 10/12/2036 | Lump Sum | $573,650 | 1 | |

**6. Beneficiary (will be Estate of Measuring Life if left blank)**

Full Name: Estate                      Phone: ( )

Address: _____

Social Security No.: _____    Relationship to Measuring Life: _____

**7. Premium   Valuable Consideration**

The Applicant represents that all statements and answers on this Application are true to the best of his or her knowledge and belief and completely recorded herein.

Applicant: _ALLSTATE SETTLEMENT CORP._ by _Barbara Keeley_ Date: 12-13-01

                Owner                      Signature & Title

NYL R115

## Addendum No. 1
## Description of Periodic Payments

$1,500 per month for life, 30 years certain, beginning 4/3/2001

$25,000.00 Lump Sum to be paid 10/12/2004

$125,000.00 Lump Sum to be paid 10/12/2007

$150,000.00 Lump Sum to be paid on 10/12/2011

$300,000.00 Lump Sum to be paid 10/12/2016

$560,000.00 Lump Sum to be paid on 10/12/2021

$560,000.00 Lump Sum to be paid on 10/12/2026

$566,500.00 Lump Sum to be paid on 10/12/2031

$573,650.00 Lump Sum to be paid on 10/12/2036

Initials

Assignor:

Assignee:

# ALLSTATE LIFE INSURANCE COMPANY OF NEW YORK

## FARMINGVILLE, NEW YORK  11738

## STRUCTURED SETTLEMENT CASH SETTLEMENT BENEFIT RIDER

If this contract has been purchased as a "Qualified Funding Asset" under Sections 72(u)(3)(C) and 130(d) of the Internal Revenue Code of 1986, as now or later amended, and whether or not there has been a qualified assignment, a Surrender Cash Settlement Benefit is added, as of the issue date of this contract.  Payment of the benefit is subject to the following terms:

This contract may be surrendered for cash within 180 days after the date of one of the following events:

(a) a decision by a court of law to end this contract owner's obligation to make future periodic payments, as funded by this contract; or

(b) a decision by the Internal Revenue Service that an assignment of this contract fails to satisfy Section 130(c) of the Internal Revenue Code, as now or later amended.

In either case, we must be given written evidence of the event, along with a request for surrender signed by the owner.  The right to surrender ends 180 days after such event.

Upon surrender, a Cash Settlement Benefit will be paid to the Owner of this contract. This Benefit shall be equal to this contract's **Book Value** multiplied by a **Market Value Adjustment**, where:

**Book Value** is equal to the present value of the period certain payments remaining under this contract on the date the request for surrender is received.  This present value shall be computed using the Monthly Average of the Composite Yield on Seasoned Corporate Bonds, less one percent, for the month prior to the month in which this contract was issued, as published by Moody's Investors Service, Inc.; and

**Market Value Adjustment** is equal to one plus the quantity:  ten times the difference between (1) the interest rate used to compute **Book Value**, as set out above, and (2) the **Market Value Interest Rate**.  The latter is equal to the Monthly Average of the Composite Yield on Seasoned Corporate Bonds, less one percent, for the month prior to the month in which surrender of this contract is requested, as published by Moody's Investors Service, Inc.

NYLU302